ALFRED A. DWIGHT AND WILLIAM M. DWIGHT v. THE
SCRANTON & WATSON LUMBER COMPANY
AND JAMES DEWEY, ASSIGNEE.

*Chattel mortgage—Purchase subject to lien—Failure to file—
Estoppel.*

1. The purchaser of property subject to the lien of a chattel mortgage, which he expressly assumes and agrees to pay as a part of the purchase price, is estopped from questioning the validity of the mortgage.
2. How. Stat. § 6193, does not *void* a mortgage as to the creditors of subsequent purchasers of the mortgaged property with knowledge of and subject to the lien of the mortgage, the payment of which they have expressly assumed.

Appeal from Wayne. (Look, J.) Argued February 9, 1888. Decided March 2, 1888.

Petition for leave to foreclose a chattel mortgage. Decree holding the mortgage not a valid lien upon the property reversed, and receiver decreed to pay the petitioner the amount due on his mortgage. The facts are stated in the opinion.

*Parker & Burton,* for petitioner, James Dewey.

*Hoyt Post,* for receiver.

MORSE, J. The complainants, as creditors of the Scranton & Watson Lumber Company, filed their bill to enforce the trust created by the assignment of said corporation for the benefit of their creditors, which proceeding had become necessary because of the failure of the assignee, James Dewey, to comply with the statute relating to voluntary assignments.

In accordance with the prayer of such bill, Abram L. Stebbins, on the tenth day of September, 1886, was appointed receiver, and afterwards qualified, and entered upon the discharge of his duties as receiver.

On or about the thirteenth day of November, 1886, James Dewey filed a petition in this cause, alleging substantially as follows:

That on or about the third day of February, 1886, the Stoepel Lumber Company, having a mill and other property at East Jordan, Michigan, procured him to indorse a promissory note of the said corporation for $3,000. To secure him for said indorsement, the said company gave him a chattel mortgage upon about 2,000,000 feet of logs, then located at its mill.

The note came due in four months, and at that time, in June, 1886, the defendant, the Scranton & Watson Lumber Co., who had agreed to assume and pay said note, paid $250 of the principal, and gave a renewal note, which Dewey reindorsed, for $2,750.

Between the giving of the mortgage and the renewal of the note, the petitioner averred, upon information and belief, that the Stoepel Lumber Company transferred the logs covered by the mortgage to the Scranton & Watson Lumber Company, said company having full knowledge of the existence of the mortgage and of its terms; and that the treasurer of said company, J. P. Scranton, was an individual stockholder of both corporations, and the person who, on behalf of such corporations, obtained the indorsements of the petitioner. That before the second note became due, the Scranton & Watson Lumber Company made its assignment for the benefit of creditors, and that the receiver, Abram L. Stebbins, has now the actual possession of the property described in the mortgage, or of the lumber cut from said logs.

That some of the lumber cut from said logs has been so intermingled with lumber belonging to said last-named cor-

poration as to be undistinguishable therefrom, but that there still remains a large quantity of the proceeds of said logs at East Jordan, and a large quantity at Detroit, to wit, 148,933 feet, which is distinct and separate from other lumber.

That the petitioner, after said assignment, was obliged to and did pay the note, and has not been reimbursed for such payment, or any part thereof.

The petitioner prayed that the lumber in Detroit might be turned over to him that he might be enabled to advertise and sell the same, according to the usual practice in the foreclosure of chattel mortgages.

The answer of the receiver admits the execution of the chattel mortgage, but avers that it was made by Watson, as president of the Stoepel Lumber Company, without the knowledge or authority of the directors of said company; the negotiations for the same being all carried on with said Watson.

Admits the execution and indorsement of the note, and that when it came due the Scranton & Watson Lumber Company paid $250 upon it, and gave its note, with Dewey's indorsement, for the remaining $2,750.

Alleges on information and belief that J. P. Scranton, one of the directors of the Stoepel Lumber Company, induced Dewey to recall the mortgage, which Dewey had mailed to East Jordan to be filed.

That the Scranton & Watson Lumber Company, before the making of said mortgage, had advanced large sums of money to the Stoepel Lumber Company to get out said logs, and that, being interested in said logs, the Scranton & Watson Lumber Company entered into a contract with Dewey, by which, in consideration of one dollar, and that Dewey would not put his mortgage on file, the said company agreed to save said Dewey harmless from his said indorsement, for which the company was to be subrogated to Dewey's rights in the mortgage; that when the assignment was made the

mortgage had not been recorded, but on the twentieth day of August, 1886, it was for the first time put on file in the office of the city clerk of Detroit; that during the time this mortgage was thus kept secret, the Scranton & Watson Lumber Company became largely indebted to creditors, without security, who had no knowledge of the existence of such mortgage; that said company was insolvent on the nineteenth day of August, 1886, and has not sufficient assets, including the mortgaged property, to pay its creditors in full.

Admits the intermingling of some of the lumber, but that there is yet lumber separate and distinct from other lumber, as claimed in the petition. Admits, on information and belief, the payment of the note by Dewey, and that he has not been reimbursed therefor.

The receiver submits that, if the chattel mortgage was given without the knowledge or authority of the directors of the Stoepel Lumber Company, it ought not to be enforced; that Dewey, in effect, accepted the guaranty of the Scranton & Watson Lumber Company as a substitute for said mortgage; that, as between Dewey and the general creditors of that company, the equities of said creditors are superior; and that, at any rate, the said Dewey ought to be postponed to the claims of the creditors who became such while the existence of the mortgage was kept secret and off the record by the agreement heretofore noted.

Proofs were taken and hearing had upon the issue thus joined, and the court below decreed that the mortgage was not, under the circumstances, a valid lien upon the property, and dismissed the petition.

The petitioner appeals to this Court.

The evidence supports the main averments of the petition, and we see no reason why his prayer should not be granted. It can make no difference whether the person executing the mortgage in behalf of the Stoepel Lumber Company had full authority to do so or not. The Scranton & Watson Lumber

Company, when it purchased the logs covered by this mortgage, knew of the existence of this mortgage, and not only did it assume the payment of it by its arrangment with the Stoepel Lumber Company, but it also solemnly agreed, by its own showing, with Dewey, that it would pay it. It therefore took this property subject expressly to the lien of Dewey's mortgage, and it cannot now be heard to assert any invalidity in its inception.

Nor can the creditors of the Scranton & Watson Lumber Company complain because the mortgage was not put on file any sooner. The Scranton & Watson Lumber Company did not incumber its property with this mortgage. It bought the property subject to the lien of the mortgage; and it paid for the property, it is to be presumed, its value, less the amount of the mortgage debt. The mortgage unrecorded was good as against the Stoepel Lumber Company, and it was good against the Scranton & Watson Lumber Company, who not only purchased the property with full knowledge of the mortgage, but also assumed its payment, and acknowledged its lien. By this agreement the property became a fund in the hands of the Scranton & Watson Lumber Company for the payment of this mortgage debt, and its title to the property or its proceeds was never absolute or complete, but always subject to the lien of this mortgage. It is not like a case where, having a perfect and absolute title to the property, a person puts a secret incumbrance upon it. The title to this property to the amount of the mortgage lien was never acquired by the Scranton & Watson Lumber Company, and the receiver of that corporation has no greater or better title than the company possessed.

The creditors of the last-named corporation have no better right to complain of this lien of this mortgage than they would have had if no mortgage had existed, and the property had passed from the Stoepel Lumber Company to the Scranton & Watson Lumber Company upon the express agreement

that the title should not pass until this lien to Dewey was paid. This, indeed, was the legal effect and tenor of the sale from the former company to the latter, when we take into consideration therewith the agreement between the Scanton & Watson Lumber Company and Dewey. The statute declares the mortgage void, if not filed, against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith. But it does not void the mortgage against the creditors of subsequent purchasers who have bought the property with knowledge of the mortgage, and who have recognized its lien, and expressly assumed its. payment. How. Stat. § 6193.          •

The creditors of the Stoepel Lumber Company do not appear, in this record, to be contesting the validity of this mortgage. Indeed, it is not shown that such corporation has any creditors. They are the only persons who could complain of the non-filing of this mortgage; and with their claims the receiver of the Scranton & Watson Lumber Company has no concern.

It appeared from the proofs that the $250 paid at the time of the renewal of the note was paid by a note made by J. P. Scranton, and indorsed by Dewey, which Dewey was obliged to pay. The petition was amended so as to show this fact, so that Dewey is entitled to the full amount of $3,000, with interest.

Under stipulations made in the cause, the receiver has converted the mortgaged property into money, and has kept his accounts relating to this property separate from his other accounts.

The decree of the court below is reversed and set aside, with costs of the proceedings in both courts to the petitioner; and a decree will be entered here directing the receiver, Abram L. Stebbins, to pay to the said petitioner, out of the funds in his hands obtained from the sale of said mortgaged property, the sum of $3,000, with interest from the twelfth day of September, 1886.

The other Justices concurred.